## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ATLAS TRADING CONGLOMERATE INC. f/k/a DOLLAR PHONE ACCESS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| AT&T INC., et. al, | § § | Civil Action No. 3:15-CV-0404-K |
| Defendants. | § § | |
| SOUTHWESTERN BELL TELEPHONE COMPANY, et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| ATLAS TRADING CONGLOMERATE INC. f/k/a DOLLAR PHONE ACCESS, INC., | § § § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Southwestern Bell Telephone Company, BellSouth Telecommunications, LLC, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company, Pacific Bell Telephone Company, and Wisconsin Bell, Inc.'s (the "AT&T ILECs") Motion for Summary Judgment (Doc. No.

1

219) on Counts 2, 4, 5, and 6 of AT&T ILECs' Verified Complaint (Civil Action No. 3:14-CV-2132, Doc. No. 1).

Atlas Trading Conglomerate Inc. ("Atlas"), formerly known as Dollar Phone Access, Inc., incurred switched access charges from the AT&T ILECs. Atlas and the AT&T ILECs entered into a confidential settlement agreement where the parties agreed that Atlas would pay monthly switched access charges to the AT&T ILECs in exchange for being able to use the AT&T ILECs' network facilities. Atlas's failure to pay the AT&T ILECs for the monthly switched access charges is the central reason for this lawsuit. The AT&T ILECs now wish to collect switched access charges that Atlas failed to pay under the terms of the confidential settlement agreement. The AT&T ILECs' claims against Atlas include: Count 1 (sworn account); Count 2 (breach of contract); Count 3 (unjust enrichment); Count 4 (attorneys' fees and litigation expenses); Count 5 (declaratory judgment); and Count 6 (application for permanent injunction).

After careful consideration of the AT&T ILECs' Motion for Summary Judgment, the response, the reply, the supporting appendices, and the applicable law, the Court **GRANTS** the motion as to Count 2 (breach of contract), and Count 4 (attorneys' fees and litigation expenses), and Count 6 (application for permanent injunction). Because of the Court's grant of summary judgment on Count 2, the AT&T ILECs' motion as to Count 5 (declaratory judgment) is dismissed because the remedy for Count 5 is duplicative. The Court's grant of summary judgment on Count 2 (breach of contract)

of the AT&Ts' claims also moots Count 1 (sworn account) and Count 3 (unjust enrichment) of the AT&T ILECs.

## I.      Factual and Procedural Background

This case is about a collection dispute between Atlas and a group of local telephone companies, the AT&T ILECs. The AT&T ILECs operate local exchange networks and provide local service in twenty one states in the United States. Atlas provides prepaid calling card services. The AT&T ILECs' services help long distance providers like Atlas begin and complete long distance calls by carrying the initial or final legs of the calls at the local network level. Because Atlas utilized the AT&T ILECs' network facilities and services, Atlas incurred originating switched access charges from the AT&T ILECs. Atlas has failed to pay monthly switched access charges to the AT&T ILECs for over the past two and a half years.

In two previous lawsuits in front of this Court that have similar facts to this case, this Court determined that prepaid calling providers like Atlas are responsible for switched access charges to the AT&T ILECs. In an attempt to avoid a lawsuit with a similar outcome, Atlas and the AT&T ILECs entered into a confidential settlement agreement in March 2013. Atlas's President initialed every page and signed the confidential settlement agreement on Atlas's behalf.

In the confidential settlement agreement, the AT&T ILECs and Atlas agreed that Atlas would pay the originating switched access charges to the AT&T ILECs on a monthly basis. Paragraph 1(c) of the confidential settlement agreement states that

"[Atlas] acknowledges and agrees that it will pay Switched Access Charges to the AT&T ILECs, on a monthly basis, in connection with [Atlas's] Service, pursuant to the applicable terms, rates, and conditions set forth in the Tariffs."   The confidential settlement agreement further states that if Atlas fails to timely comply with the terms of the agreement "and fails to cure such breach within ten (10) business days of the AT&T ILECs' written notice demanding that [Atlas] cure the breach, and the AT&T ILECs institute suit against [Atlas] for non-payment (whether entitled as a breach of contract action or otherwise), [Atlas] agrees to pay the AT&T ILECs' costs of such suit(s), including attorney's fees."

The AT&T ILECs set up four billing account numbers to bill Atlas for monthly switched access fees.  Each billing account number corresponds with a different region of the United States that is covered by the AT&T ILECs.  The Pacific Bell Telephone Company and the Nevada Bell Telephone Company's billing account number covers portions of California and Nevada (the "West billing account number").  Southwestern Bell Telephone Company's billing account number covers portions of Texas, Arkansas, Kansas, Missouri, and Oklahoma (the "Southwest billing account number").  BellSouth Telecommunications, LLC's billing account number covers portions of Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee (the "Southeast billing account number").  Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone Company, The Ohio Bell Telephone Company, and Wisconsin Bell, Inc.'s billing

account number covers portion of Illinois, Indiana, Michigan, Ohio, and Wisconsin (the "Midwest billing account number"). To calculate the switched access charges, the AT&T ILECs multiplied the switched access minutes used on their network facilities by the per minute rates that were set forth in the confidential settlement agreement.

In the confidential settlement agreement, Atlas and the AT&T ILECs agreed that the "invoices for Switched Access Charges shall be based upon the local access numbers contained in such quarterly statements" provided by Atlas to the AT&T ILECs. The AT&T ILECs match the local access numbers contained in the quarterly statements that were provided by Atlas with their electronic records of calls Atlas made using local access numbers on the AT&T ILECs' networks and charge Atlas accordingly. The AT&T ILECs would then provide Atlas with documentation showing in further detail how the monthly charges are calculated.

After initially making monthly payments under the terms of the confidential settlement agreement, Atlas ceased to fulfill its obligations. Atlas has not made monthly payments for switched access charges to the AT&T ILECs since December 2013. Specifically, Atlas made its last payment for switched access charges on October 1, 2013 for the Southeast billing account number, on November 25, 2013 for the Southwest billing account number, on December 10, 2013 for the Midwest billing account number, and on December 15, 2013 for the West billing account number. The AT&T ILECs have since issued 119 invoices for Atlas's monthly switched access charges, which all remain unpaid.

On April 29, 2014, following the terms of the confidential settlement agreement, the AT&T ILECs notified Atlas of its breach of the agreement and gave it ten days to cure the breach. Despite the notice of breach of the confidential settlement agreement, Atlas continued to neglect making required monthly payments for switched access charges. Because of the past due payments, Atlas incurred additional late payment charges and tax reimbursement costs that it is required to pay the AT&T ILECs under the confidential settlement agreement. Atlas has continued to use the AT&T ILECs' network facilities so that it can provide its prepaid calling card services even though it has not paid the AT&T ILECs for switched access charges since December 2013.

Anticipating a lawsuit to enforce the confidential settlement agreement, Atlas filed suit in the United States District Court for the Eastern District of New York against the AT&T ILECs. Atlas argued that the confidential settlement agreement and the charges they incurred under the agreement were contrary to the AT&T ILECs' filed tariffs. The AT&T ILECs and the Southern New England Telephone Company then filed suit in this Court against Atlas to enforce the confidential settlement agreement. This Court denied Atlas's motion to dismiss the lawsuit on October 7, 2014, finding that Atlas's anticipatory lawsuit in the Eastern District of New York was improper forum shopping. On February 9, 2015, the Eastern District of New York transferred Atlas's lawsuit to the Northern District of Texas, where it was consolidated with the AT&T ILECs and Southern New England Telephone Company's lawsuit.

On January 7, 2016 this Court dismissed Atlas's Third Amended Complaint in its entirety which included claims against the AT&T ILECs such as: violations of sections 201, 202, and 203 of the Communications Act of 1934, fraud, negligent misrepresentation, tortious interference, civil conspiracy, unjust enrichment, and declaratory judgment.  The Court's Memorandum Opinion and Order dismissed Atlas's claims that attempted to invalidate the enforceability of the confidential settlement agreement. "[T]he Court view[ed] the Settlement Agreement and Release as binding, final, and conclusive of the rights of the parties."  The Court characterized Atlas's claims as "frivolous" and ruled in favor of the AT&T ILECs.

The AT&T ILECs now bring this Motion for Summary Judgment to the Court to enforce the confidential settlement agreement that it entered with Atlas.  The AT&T ILECs allege that Atlas breached the confidential settlement agreement by not paying monthly originating switched access charges.

## II.   AT&T ILECs' Motion for Summary Judgment

### a.  Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing by reference to materials on file that there is no genuine issue of material fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The nonmovant must then go "beyond the pleadings" and introduce competent evidence like affidavits, depositions, admissions, to establish "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The Court must view all evidence and reasonable inferences in the light most favorable to the nonmovant and determine whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *United States v. Die bold, Inc.*, 369 U.S. 654, 655 (1962); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The AT&T ILECs move for summary judgment on Count 2 (breach of contract), Count 4 (attorneys' fees and litigation expenses), Count 5 (declaratory judgment), and Count 6 (application for permanent injunction). The AT&T ILECs argue that Atlas did not pay the originating switched access charges that are owed under the terms of the confidential settlement agreement.

The Court agrees with the AT&T ILECs. The AT&T ILECs have shown through pleadings, affidavits, and other summary judgment evidence that no genuine issue of material fact exist. Atlas has not satisfied their burden as nonmovants to show that genuine issues of material fact exist for trial. Atlas's attempts at asserting affirmative defenses and claims against the AT&T ILECs to invalidate the confidential settlement agreement did not persuade the Court to conclude that there was a genuine issue of material fact. The AT&T ILECs have shown that they entered into a valid and enforceable settlement agreement with Atlas. The AT&T ILECs are entitled to all the originating switched access charges, court costs, late payments charges, taxes, and

attorneys' fees that Atlas owes to them.  Accordingly, the AT&T ILECs are entitled to judgment as a matter of law.  The Court will now address why it grants the AT&T ILECs' Summary Judgment Motion as to Count 2 (breach of contract), Count 4 (attorneys' fees and litigation expenses), and Count 6 (application for permanent injunction).

### b.  Atlas Breached the Confidential Settlement Agreement.

The Court holds that Atlas breached the confidential settlement agreement by neglecting to make payments to the AT&T ILECs.  "[S]ettlement agreements, when fairly arrived at and properly entered into, are generally viewed as binding, final and as conclusive of the rights of the parties as is a judgment entered by the court." *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986) (citing *Thomas v. Louisiana,* 534 F.2d 613, 615 (5th Cir. 1976); *Cia Anon Venezolana De Navegacion v. Harris*, 347 F.2d 33, 35–36 (5th Cir. 1967)).

The Court previously dismissed each of Atlas's claims that attempted to invalidate the enforceability of the confidential settlement agreement in January 2016. The Court characterized Atlas's claims as frivolous.  Similar to the response brief to this motion before the Court, Atlas argued that the confidential settlement agreement is invalid and unenforceable.  In response to this motion before the Court, the Court again holds that the confidential settlement agreement is valid and enforceable.  Atlas presented no facts in its response to the AT&T ILECs' motion to show that the confidential settlement agreement is invalid or that a genuine issue of material fact

exists.  Atlas violated the terms of the confidential settlement agreement by failing to make monthly payments for the switched access charges to the AT&T ILECs.

The question of whether Atlas breached the confidential settlement agreement is governed and construed under Texas law.  Under Texas law, the required elements for a breach of contract claim: (1) the existence of a valid contract; (2) performance or tendered performance by the non-breaching party; (3) breach by the other party; and (4) damages resulting from the breach of the contract.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003).  A party "is entitled to summary judgment if there is no genuine dispute of material fact regarding any of the element of its breach contract claim."  *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003).

The first element required for a breach of contract claim is met because a valid contract exists between Atlas and the AT&T ILECs.  A signed agreement is evidence of a valid and enforceable agreement.  *W. Sur. Co. v. Medsolutions, Inc.*, No. 3:01-CV-2248-P, 2003 WL 251433, at *4 (N.D. Tex. Feb. 3, 2003).  Atlas and the AT&T ILECs entered into the confidential settlement agreement in March 2013.  The settlement agreement between the parties was fruit from two virtually identical lawsuits in this Court that held that prepaid calling card providers like Atlas are responsible for switched access charges to the AT&T ILECs.  To avoid an additional lawsuit, Atlas and the AT&T ILECs entered into the confidential settlement agreement. The confidential settlement agreement between Atlas and the AT&T ILECs was initialed on every page

and signed by the President of Atlas on Atlas's behalf.  Atlas and the AT&T ILECs entered into a valid contract.

The AT&T ILECs performed under the agreement to satisfy the next required element for a breach of contract claim.  As part of the confidential settlement agreement, the AT&T ILECs have agreed to allow Atlas use their network facilities.  The AT&T ILECs provided Atlas with access to their network facilities so that Atlas could perform its prepaid calling card services.  The AT&T ILECs have continually offered Atlas access to their network facilities since the parties have entered the settlement agreement.  The AT&T ILECs has even allowed Atlas to use their facilities after Atlas failed to make the monthly payments agreed to in the confidential settlement agreement.  The AT&T ILECs have satisfied this element for there to be a breach of contract claim.

The next required element for there to be a breach of contract claim is satisfied because Atlas breached the confidential settlement agreement.  In the confidential settlement agreement "Atlas acknowledge[d] and agree[d] that it [would] pay Switched Access Charges to the AT&T ILECs, on a monthly basis, in connection with Atlas's Service."  Although Atlas initially made payments under the confidential settlement agreement, it failed to make adequate payments to the AT&T ILECs.  Atlas made its last payment to the AT&T ILECs in December 2013 when it made a payment to the West billing account number.  The AT&T ILECs have since issued 119 bills to Atlas for switched access charges that have remained unpaid.  Despite the AT&T ILECs

providing Atlas notice of the breach with an opportunity to cure, Atlas failed to pay the AT&T ILECs for the switched access charges.   Because of Atlas's breach of the terms of the settlement agreement, this required element for a breach of contract claim is satisfied.

The AT&T ILECs experienced damages as a result of Atlas's breach to satisfy the last element for there to be a breach of contract claim.   The AT&T ILECs experienced damages from Atlas because Atlas did not pay the balance for the monthly switched access charges. The last required element for there to be a breach of contract claim is satisfied.

Atlas breached the confidential settlement agreement under Texas law.   The Court **GRANTS** summary judgment on Count 2 of the AT&T ILECs' claims.

### c.   The AT&T ILECs Are Entitled to Damages Because Of Atlas's Breach of the Confidential Settlement Agreement.

The Court holds that Atlas is responsible for paying the damages for its breach of the confidential settlement agreement.   The balance that Atlas owes to the AT&T ILECs consists of originating switched access charges, late payment charges due to failure to make switched access payments, and tax payment reimbursements.   Atlas made its last payments for invoices relating to each of the billing account numbers between October 2013 and December 2013.   Since Atlas paid its last invoice to the AT&T ILECs in December 2013, the AT&T ILECs have issued 119 bills to Atlas.   Atlas has not paid any portion of the 119 invoices.   As of May 31, 2016, Atlas owes $885,108.17 to the AT&T ILECs.

12

The amount of switched access charges that the AT&T ILECs charged to Atlas were calculated by multiplying the amount of time Atlas used the AT&T ILECs' network facilities by the per minute rates the parties agreed to in the confidential settlement agreement.  In total, as of May 31, 2016, Atlas has a balance of $673,302.70 that has not been paid to the AT&T ILECs for switched access charges.  Specifically, Atlas has a balance of $497,072.70 for the West billing account number, $65,480.15 for the Southwest billing account number, $46,842.38 for the Southeast billing account number, and $63,907.47 for the Midwest billing account number.  The AT&T ILECs are entitled to the payments from the switched access fees that Atlas owes.

The AT&T ILECs are also entitled to late payment charges that incurred because of Atlas not paying monthly switched access charges by the designated due date.  For each of the AT&T ILECs monthly payment charges that have not been paid, a late payment charge is applied by the AT&T ILECs.  Atlas argues that the AT&T ILECs' do not have the ability to apply late payment charges to its balance because late payment charges were not explicitly mentioned in the confidential settlement agreement.  However, the late payment charges are included under "the applicable terms" of the tariffs that Atlas agreed to pay the AT&T ILECs for in Paragraph 1(c) of the confidential settlement agreement.  Paragraph 1(c) of the confidential settlement agreement states that "[Atlas] acknowledges and agrees that it will pay Switched Access Charges to the AT&T ILECs, on a monthly basis, in connection with [Atlas's] Service, pursuant to the applicable terms, rates, and conditions set forth in the Tariffs."  Each

of the tariffs have a specific percentage charge to past due payment amounts, which Atlas agreed to pay when it signed the confidential settlement agreement.  The total amount of late payment charges that Atlas owes to the AT&T ILECs as of May 31, 2016 is $206,678.93.  The cumulative amount of $206.678.93 for late payment charges consists of: $153.226.18 for the West billing account number; $21,404.28 for the Southwest billing account number; $14,954.59 for the Southeast billing account number; and $17,093.88 for the Midwest billing account number.

Additionally, Atlas is responsible for reimbursing the AT&T ILECs for tax payments.  Atlas did not properly provide the AT&T ILECs with tax certificates that apply to resellers.  In the confidential settlement agreement, Atlas agreed to provide the AT&T ILECs with "any reseller and/or use certificates and federal, state, and/or local tax forms."  Atlas only provided the AT&T ILECS with certificates that are valid for Kansas and North Carolina and did not provide the AT&T ILECs with proper tax certificates for Florida and Illinois.  As a consequence of not having the proper tax certificates, the AT&T ILECs were required to pay taxes to Florida and Illinois on behalf of Atlas.  The AT&T ILECs then billed Atlas for a reimbursement for the tax payments.  However, Atlas failed to reimburse the AT&T ILECs for the $5,674.45 of tax payments they made.

Collectively, the AT&T ILECs are entitled to the entire amount of unpaid switched access charges, late payment charges, and taxes that are owed by Atlas.  As of

May 31, 2016 the AT&T ILECs were owed $885,108.17 and this amount continues to accrue pursuant to the terms of the confidential settlement agreement.

### d. The AT&T ILECs Are Also Entitled to Have Atlas Pay For Attorneys' Fees and Litigation Expenses for this Lawsuit.

Count 4 of the AT&T ILECs' claims alleges that they are entitled to have Atlas pay for attorneys' fees and costs stemming from this lawsuit. The Court concludes that because of Atlas's failure to make monthly switched access payments, Atlas's failure to cure its breach of the confidential settlement agreement within ten days from when the AT&T ILECs gave notification it breached, and the AT&T ILECs lawsuit for nonpayment, the AT&T ILECs are entitled to attorneys' fees and costs. The confidential settlement agreement states that if "[Atlas] fails to comply with its [originating switched access charge obligations] and fails to cure such breach within ten (10) business days of the AT&T ILECs written notice demanding that Atlas cure the breach, and the AT&T ILECs institute suit against [Atlas] for non-payment (whether entitled as a breach of contract action or otherwise), Atlas agrees to pay the AT&T ILECs' costs of such suit(s), including attorney's fees."

The AT&T ILECs satisfied each of the conditions that are required to be met for attorneys' fees and court costs for this lawsuit to have to be paid by Atlas. Atlas did not fulfill its obligation to pay for monthly switched access charges. The AT&T ILECs gave written notice to Atlas to cure the breach on April 29, 2014, and Atlas failed to cure the breach. The AT&T ILECs then brought this lawsuit because of Atlas's nonpayment. Accordingly, the AT&T ILECs are entitled to have the costs associated

with this lawsuit, including attorneys' fees, paid for by Atlas under the terms confidential settlement agreement.  The Court **GRANTS** summary judgment on Count 4 of the AT&T ILECs' claims.

### e. The AT&T ILECs Request for Declaratory Judgment is Duplicative.

The AT&T ILECs also request that the Court grant Count 5 (declaratory judgment).  Count 5 is duplicative of the AT&T ILECs' breach of contract claim. Notably, the Court's opinion granting summary judgment on the AT&T ILECs' claims for breach of contract (Count 2) and attorneys' fees (Count 4), entitles the AT&T ILECs to recover from Atlas the $885,108.17 that it is owed as of May 31, 2016 and the additional amount that continues to accrue based on the terms of the confidential settlement agreement.  This same relief is requested by the AT&T ILECs in their declaratory judgment claim.

By the Court granting summary judgment on the breach of contract claim, the AT&T ILECs are entitled to get the same type of recovery that the Court granting declaratory judgment would provide.  *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996) ("Although the petition formally stated two independent causes of action for breach of contract and declaratory judgment, the latter ground is merely a theory of recovery of the former.").  Therefore, the AT&T ILECs' request for declaratory judgment is duplicative of the breach of contract claim and is dismissed.  *See Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 710 (N.D. Tex. 2011) (stating that if a request for declaratory

16

judgment adds nothing to an existing lawsuit, it need not be permitted (citing *Madry v. Fina Oil & Chem. Co.*, 44 F.3d 1004 (5th Cir. 1994)); *Landscape Design & Const., Inc. v. Transp. Leasing/Contract*, No. CIV.A.3:00-CV-0906-D, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002) (dismissing declaratory judgment action as redundant).

### f.   The AT&T ILECs Request for Permanent Injunction for Future Payments is Granted.

The AT&T ILECs also request that the Court grant summary judgment on Count 6 (application for permanent injunction).  To obtain a permanent injunction, a party must demonstrate that (1) it has achieved actual success on the merits; (2) it has sustained irreparable injunction or there is no adequate remedy at law; (3) considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the injunction will not disserve the public interest.  *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008).  Based on the summary judgment evidence, the Court holds that a permanent injunction is warranted to require Atlas to make future payments under the confidential settlement agreement.

Generally, specific performance of contract to pay money is not available in equity and a party cannot be enjoined to make payments of money past due under a contract.  *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210–11 (2002).  However, the Court's holding in *Great-W. Life & Annuity Ins. Co. v. Knudson* did not extend to an injunction to compel future payment amounts that are not yet ascertainable.  *Id.* at 211.  The Court's holding noted that specific performance might be available to "enforce an obligor's duty to make future monthly payments, after the

obligor had consistently refused to make past payments concededly due, and thus threatened the obligee with the burden of bringing multiple damages actions." *Id*.

The foregoing reasoning of the Court establishes that the AT&T ILECs have achieved actual success on the merits of their breach of contract claim.  The AT&T ILECs will suffer immediate and irreparable harm because Atlas has consistently failed to pay the AT&T ILECs under the terms of the confidential settlement agreement since December 2013.  Despite Atlas's failure to pay the AT&T ILECs for their usage of the AT&T ILECs network facilities, Atlas has continued to use the networks of the AT&T ILECs and will likely continue to use the network facilities in the future.  Without the injunction, the AT&T ILECs will have no adequate remedy at law and will be required to continually to bring lawsuits to recover damages from Atlas.  *See Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 657 F. Supp. 2d 795, 829–30 (S.D. Tex. 2009) ("Injunctive relief is appropriate when a plaintiff can secure legal relief only through a multiplicity of lawsuits.").  The balance of the hardships and the public interest favor the injunction because the AT&T ILECs will continue to face hardship each time that Atlas withholds payments.  Also, the public interest will be served by providing the AT&T ILECs a remedy in equity because a party will be not be able to escape an obligation that it agreed to in a contract.

Atlas should not be permitted to intentionally violate the terms under the confidential settlement agreement.  Accordingly, the Court **GRANTS** summary

judgment on Count 6 so that Atlas will be required to make future payments under the terms of the confidential settlement agreement.

## III.   Conclusion

The AT&T ILECs have shown that they entered into a valid and enforceable settlement agreement with Atlas that requires Atlas to pay originating switched access charges.   The Court finds after reviewing Atlas's pleadings, affidavits, and other summary judgment evidence that no genuine issue of material fact exists on AT&T ILECs' claims for breach of contract and attorneys' fees.   Atlas has not satisfied their burden as nonmovants to show that genuine issues of material fact exist for trial. Accordingly, the AT&T ILECs are entitled to judgment as a matter of law, court costs, post-judgment interest, attorneys' fees, and the entire amount owed because of Atlas's breach of the confidential settlement agreement.   Accordingly, the Court **GRANTS** the AT&T ILECs' Motion for Summary Judgment as to Count 2 (breach of contract), Count 4 (attorneys' fees and litigation expenses), and Count 6 (application for permanent injunction).   Because of the Court granting summary judgment on Count

2, the AT&T ILECs' motion as to Count 5 (declaratory judgment) is dismissed because it is duplicative.

**SO ORDERED.**

Signed October 5th, 2016.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE